UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     vs.<br><br>CHARLES KIEFFE,<br><br>          Defendant. | CR. 18-50051-JLV<br><br><br>ORDER |

## INTRODUCTION

Defendant Charles Kieffe, appearing *pro se*, filed a motion for compassionate release.  (Docket 67).  Attorney Ellery Grey, a member of the Criminal Justice Act, 18 U.S.C. § 3006A, panel for the District of South Dakota, was appointed to represent Mr. Kieffe.  (Docket 68).  Pursuant to the May 1, 2020, Standing Order 20-06, the United States Attorney for the District of South Dakota and Attorney Grey filed records, submissions, and briefing on Mr. Kieffe's motion.  (Dockets 70 through 73, 75, 78, 80-81, 81-1, 82 & 85). Mr. Kieffe filed additional supplements and letters in support of his motion. (Dockets 69, 83 & 85).  For the reasons stated below, defendant's motion is denied.

## STANDING ORDER 20-06

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place a

---

[1] See https://www.sdd.uscourts.gov/socraa.  ("SO 20-06").

procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(c)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system.  (SO 20-06 at p. 1).  By the standing order, "within two business days of filing all motions for compassionate release[,]" the United States Attorney for the District of South Dakota was "to place [the defendant] into one of four categories[.]"  Id. at p. 2 ¶ 4.  Those categories are:

  a.  High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § 1.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

  b.  Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

  c.  Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

  d.  Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id.  The U.S. Attorney was to "immediately report the categorization . . . to the Clerk of Court and the Probation Office."  Id.  The standing order contains provisions for sharing of critical information between defense counsel, the U.S. Attorney, the Probation Office and the Court.  Id. ¶ 5.

## MR. KIEFFE'S CLASSIFICATION

The U.S. Attorney filed a notice designating Mr. Kieffe's case as an Intermediate Priority case.  (Docket 70).

## FACTUAL BACKGROUND

On March 22, 2019, Mr. Kieffe was sentenced to a term of imprisonment of 120 months for discharge of a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii).  (Docket 62).  The presentence report ("PSR") reported that pursuant to United States Sentencing Guideline "§ 2K2.4, the guideline sentence is the mandatory minimum term of imprisonment required by statute[,that is], the minimum term of imprisonment is 10 years."  (Docket 51 ¶ 61).  Mr. Kieffe was sentenced to the statutory minimum term of 120 months.  (Docket 62 at p. 2).

Mr. Kieffe is currently an inmate at USP Florence-High, a high security prison in Florence, Colorado.  See https://www.bop.gov.locations/ institutions/flp/ (last checked September 8, 2023).

Mr. Kieffe's scheduled release date is February 28, 2027, and under his current status in the BOP his home detention eligibility date is August 28, 2026.  (Docket 72 at p. 79).  As of this date, Mr. Kieffe has served about 51.2 percent of his sentence.  See Docket 72 at p. 75.  Mr. Kieffe is 38 years old.  (Docket 51 at p. 2).

3

**MR. KIEFFE'S MOTION**

Mr. Kieffe's motion seeks compassionate release for extraordinary and compelling reasons based on his personal health conditions coupled with the COVID-19 pandemic. (Docket 67). Mr. Kieffe alleges he has several conditions that place him at greater risk for a serious illness if he contracts COVID-19, including "diabetes, high blood pressure and high cholesterol." Id. His attorney's motion for compassionate release identifies "type 2 diabetes mellitus . . . and obesity" together with "hypertension . . . and elevated cholesterol levels" as the critical health factors supporting Mr. Kieffe's motion. (Docket 81 at p. 2).

As of June 27, 2022, Mr. Kieffe's medical records disclose he was diagnosed with the following medical conditions:

- Type 2 diabetes. (Docket 80 at p. 7);
- Endocrine disorder, unspecified. Id.;
- Hypertensive heart disease without heart failure. Id.; and
- Hyperlipidemia.[2] Id. at p. 8.

Mr. Kieffe argues he should be granted compassionate release because "he is uniquely at risk of contracting and developing serious complications from COVID-19." (Docket 81 at p. 1). "Due to the chronic pain that [he] is suffering from his obesity and other underlying ailments," Mr. Kieffe argues "he

---

[2] High cholesterol.

4

is unable to adequately provide self-care to control his diabetes, he is unable to provide self-care to prevent contracting COVID-19, and he is unable to care for himself if he does." Id. at pp. 2-3.

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

At Mr. Keiffe's request, the court stayed this matter to allow him to complete the administrative proceedings required by § 3582(c)(1). (Docket 77). Ten months later, Mr. Kieffe filed a copy of his attorney's letter to the FCI Victorville Warden seeking compassionate release. (Docket 81-1). The warden never responded to Mr. Kieffe's request. (Docket 81 at p. 2).

The court finds Mr. Kieffe exhausted the administrative relief provision contemplated by § 3582(c)(1)(A). The 30-day period contemplated by

5

§ 3582(c)(1)(A) began to run from the date Mr. Kieffe's request was received by the warden. Mr. Kieffe completed the administrative process contemplated by the statute, and his motion is subject to review on the merits.

**Extraordinary and Compelling Reasons**

Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The inmate bears the burden to establish that compassionate release is warranted. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). The district court is not required to investigate possible avenues for relief or to develop the record in support of a motion. United States v. Banderas, 39 F.4th 1059 (8th Cir. 2022).

Congress did not define what constitutes "extraordinary and compelling." 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. Id. Prior to Congress passing the FSA, the Sentencing

6

Commission limited "extraordinary and compelling reasons" to four scenarios which are the consideration of the defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served and (4) compelling family circumstances. Id. There was a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D). These categories have not been updated since December 2018 when FSA became law.[3]

As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act"). The purpose of the First Step Act is to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act. It is clear Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district

---

[3]Until recently the United States Sentencing Commission lacked a quorum, and the newly established commission has not amended the United States Sentencing Guidelines.

7

courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission.  See 18 U.S.C. § 3582(c)(1)(A).

May 11, 2023, marked the end of the federal COVID-19 public health emergency declaration.  https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html (last visited June 12, 2023).  That does not mean the risks of severe illness or death from COVID-19 no longer exist.

Mr. Kieffe is 38 years old.  The CDC recognizes the risk of severe illness as a result of COVID-19 increases with age with older adults at higher risk. https://www.cdc.gov/aging/covid19/index.html (last visited September 11, 2023).  "Most COVID-19 deaths occur in people older than 65."  Id.  "[T]he risk of death is 25 time higher in those ages 50-64" when compared with those under 29 years of age.  https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last visited September 11, 2023).

The CDC updated its understanding of the health conditions increasing the risk from COVID-19.  The CDC now states individuals with the following conditions can be more likely to become severely ill from COVID-19: asthma, cancer, cerebrovascular disease, chronic kidney disease, chronic lung diseases (including chronic obstructive pulmonary disease ("COPD") and pulmonary hypertension), certain chronic liver diseases, type 1 or type 2 diabetes, heart conditions (such as heart failure, coronary artery disease or cardiomyopathies), HIV infection, certain mental health conditions, dementia, obesity (with a BMI

of 30 or higher), primary immunodeficiencies, being a current or former smoker and several others.  Id.

Mr. Kieffe has two of these conditions: diabetes and hypertension.  By his own choosing these conditions are not currently being treated with medications.  (Docket 80 at p. 1).  Previously, Mr. Kieffe had been diagnosed as obese with a body mass index ("BMI") of 37.2.[4]  Id. at p. 16.  However, as of September 6, 2022, Mr. Kieffe's weight was 234 pounds and "[h]e reports that previously his weight is closer to 300 pounds, [he] modified his diet, exercise[s], works out and has lost weight."  Id. at pp. 1-2.  His blood pressure was "123/75."  Id. at p. 1.  As of that examination, Mr. Kieffe was no longer taking metformin for diabetes or medication for high cholesterol.  Id.  Mr. Kieffe was prescribed Lisinopril for his hypertension.  Id. at p. 2.

Mr. Kieffe had two confirmed COVID-19 episodes in December 2020 and January 2022.  Id. at pp. 9 and 39-40.  He fully recovered from those periods of isolation and was asymptomatic.  Id. at p. 40.  When exiting FCI Victorville in California, Mr. Kieffe's records report he received a total of three COVID-19 vaccines.  Id. at p. 17.  In March 2021 and June 2022, Mr. Kieffe refused three COVID-19 vaccinations.  (Dockets 79 at p. 29 and 80 at pp. 11 & 45).

---

[4]A person is classified as obese with a BMI of 30 or greater.  See Adult BMI Calculator, Ctrs. for Disease Control & Prevention, https://www. cdc. gov/ healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_ calculator.html (last checked September 11, 2023).

The court is persuaded that Mr. Kieffe's prior asymptomatic course after positive COVID-19 tests cannot be ignored in evaluating whether extraordinary and compelling reasons warrant a reduction in his sentence.  From the court's review of the medical records, Mr. Kieffe appears generally healthy.  The court does not diminish Mr. Kieffe's health concerns.  Nor does it deny the possibility Mr. Kieffe could contract the COVID-19 virus again in the future. Nevertheless, his medical conditions coupled with his age are not extraordinary and compelling reasons warranting release in the face of diminishing COVID-19 episodes.

### **SECTION 3553(a) FACTORS**

Were the court to find Mr. Kieffe's medical conditions constitute extraordinary and compelling circumstances, the court must still consider whether compassionate release comports with the § 3553(a) factors.  These include "the nature and circumstances of the offense and the history and characteristics of the defendant," among others.  18 U.S.C. § 3553(a).  "[T]he history and characteristics of the defendant" require the court to consider the defendant as a whole person.  Koon v. United States, 518 U.S. 81, 113 (1996).

In Mr. Kieffe's case, the nature and circumstances of his offense are serious.  After engaging in a drug transaction at his home, Mr. Kieffe chased a vehicle which he believed contained the drug dealer.  (Docket 51 ¶¶ 5-6). During the chase, Mr. Kieffe exited his vehicle and fired three rifle shots at the other vehicle, striking the windshield and the passenger's side window.  Id.

10

¶¶ 5 & 8.  One of the passengers in that vehicle was struck in the leg and abdomen by bullet fragments.  Id. ¶¶ 8, 10 & 15.  At the time of defendant's arrest shortly after the incident, his urinalysis was positive for methamphetamine and TCH.  Id. ¶ 12.  His offense of conviction, discharge of a firearm during a crime of violence, carries a statutory mandatory minimum sentence of ten years and a maximum sentence of life.  Id. ¶ 16.

Mr. Kieffe asserts he has "an exemplary prison record – having no disciplinary violations" while in BOP custody.  (Docket 81 at p. 6).  That argument is not accurate.  On February 19, 2020, Mr. Kieffe was sanctioned for participating in an assault on another "inmate using fists and stomps." (Docket 71 at p. 31).  For this conduct, Mr. Kieffe was placed in administrative segregation for three days and lost commissary privileges for four months.  Id.

As mentioned earlier, the court sentenced Mr. Kieffe to a term of incarceration of 120 months, the statutory minimum.  (Docket 62).  The court concludes Mr. Kieffe's sentence continues to be appropriate for the seriousness of the crime he committed.

The court carefully reviewed the submissions by Mr. Kieffe in support of his motion for compassionate release and considered the factors set forth in § 3553(a) and the policy statements issued by the Sentencing Commission to the extent they are applicable.  Mr. Kieffe has not demonstrated "extraordinary and compelling reasons" warranting a reduction in his sentence.

11

**ORDER**

No good cause having been proven, it is

ORDERED that defendant's motions for compassionate release (Dockets 67 & 73) are denied.

IT IS FURTHER ORDERED that defendant's *pro se* motion to be returned to the Oglala Sioux Tribal Jail (Docket 84) is denied.

Dated September 19, 2023.

                      BY THE COURT:

                      /s/ *Jeffrey L. Viken*
                      JEFFREY L. VIKEN
                      UNITED STATES DISTRICT JUDGE